**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEFFREY NICKEL,

                       Petitioner,

        - v -                                      Civ. No. 9:06-CV-390
                                                        (LEK/RFT)

ROBERT E. ERCOLE, *Superintendent of Green Haven Correctional Facility,*

                       Respondent.

**APPEARANCES:**                             **OF COUNSEL:**

JAMES E. LONG
Attorney for Petitioner
668 Central Ave.
Albany, NY 12206

HON. ANDREW M. CUOMO                    PAUL B. LYONS, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

       Petitioner Jeffrey Nickel brings this *Habeas Corpus* Petition, pursuant to 28 U.S.C. § 2254, on the following grounds: the trial court violated his due process rights by (1) denying his motion for a pre-trial "taint hearing" and (2) excluding expert testimony, and (3) ineffective assistance of counsel. Dkt. No. 13, Pet'r Mem. of Law. For the reasons that follow, it is recommended that the Petition be **denied**.

**I. BACKGROUND**

       On August 18, 2000, Petitioner was indicted by an Albany County Grand Jury on seven (7)

counts:

1.   Sodomy in the First Degree (N.Y. PENAL LAW § 130.50(3))
2.   Aggravated Sexual Abuse in the Second Degree (N.Y. PENAL LAW § 130.67(1))
3.   Use of a Child in a Sexual Performance (N.Y. PENAL LAW § 263.05)
4.   Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65)
5.   Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65)
6.   Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10)
7.   Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65)

Dkt. No. 15, State Ct. R. (hereinafter "R.") at pp. 46-52.

Represented by William J. Gray, Petitioner proceeded to a bench trial on May 17, 2001, before the Honorable Paul Czajka, visiting County Court Judge.

At trial, Claudette Scostak, a mail clerk at the Albany Correctional Facility, testified that while inspecting incoming mail for contraband in early August 2000, she happened upon four letters from Petitioner addressed to an inmate that contained pictures of young boys. Dkt. No. 15, R., Trial Tr., dated May, 17, 2001 (hereinafter "Trial Tr."), at pp. 26-35. None of the pictures contained any nudity or other sexual activity, however, the clerk nonetheless delivered the letters to her supervisor, and the Albany County Sheriff's Department was notified. *Id.* at pp. 39-41. Thereafter, the Sheriff's Department commenced an investigation and located and interviewed some of the boys in the photographs, including K.S. and Z.K.[1] *Id.* at pp. 41-43. After conducting such interviews, the police interviewed Petitioner.

Petitioner gave a signed statement to Investigator Mark DeFrancesco, which was offered and accepted into evidence at trial. *Id.* at pp. 287-98. In his statement, Petitioner stated that while he was working as a counselor at a day camp, he "horsed around" in the pool with J.C. and "reach[ed] and grabb[ed] his butt," which "excited" Petitioner. R., Pet'r Statement, dated Aug. 7, 2000, at p.

---

[1] Initials will be used in lieu of the boys' complete names in order to maintain confidentiality of their identities. *See* N.Y. CIV. RIGHTS LAW § 50-b.

42. He stated that while in the pool he "probably steered [his] foot into [J.C.'s] groin, touching his penis and scrotum." *Id.* Petitioner also stated that while volunteering at a children's center he "may have [fallen] in love with [K.S.]." *Id.* at p. 43. He admitted to touching K.S. in a sexual manner and for his own sexual gratification while playing in the pool, stating that he "would feel [K.S.'s] bottom with [his] hands caressing it," and that he touched K.S.'s groin and was stimulated as a consequence. *Id.* After his interview, Petitioner consented to a search of his home that yielded, *inter alia*, a picture of a man who appeared to be Petitioner engaged in a sexual act with a boy. *Id.* at pp. 50-60.

Three boys, K.S., J.C., and Z.K., testified against Petitioner at trial after a determination by the court that they were competent to testify. K.S. testified that Petitioner: "put his hands in [K.S.'s] pants" on several occasions while they swam in a local pool; put his finger inside K.S.'s anus on one occasion; and that Petitioner placed his mouth on K.S.'s penis and took a photograph of the act. Trial Tr. at pp. 182-90, & 194. J.C. testified that while in a swimming pool, Petitioner put his foot inside J.C.'s swim trunks and touched his testicles with his foot. *Id.* at pp. 228-30. Z.K. testified that he did not have any sexual contact with Petitioner.[2] *Id.* at p. 266. Mr. Gray, Petitioner's counsel, cross-examined both K.S. and J.C. *Id.* at pp. 207-12, & 230-38.

Judge Czajka convicted Petitioner of one count each of Sodomy in the First Degree (count #1), Aggravated Sexual Abuse in the Second Degree (count #2), Endangering the Welfare of a Child (count #6), and two counts of Sexual Abuse in the First Degree (counts # 4 & 5), but acquitted him of count # 3, Using a Child in a Sexual Performance.[3] Trial Tr. at pp. 467-68. Petitioner was thereafter sentenced to a determinate term of twenty-five (25) years incarceration on the Sodomy

---

[2] The charges concerning Z.K. were thereafter dropped by the prosecution.

[3] Count seven (7) was dropped by the prosecution during the trial. *People v. Nickel*, 788 N.Y.S. 2d 274 (N.Y. App. Div. 3d Dep't 2005) ("Following a bench trial, the court dismissed one count of aggravated sexual abuse.").

conviction; a determinate term of fifteen (15) years incarceration on the Aggravated Sexual Abuse conviction; and two determinate terms of seven (7) years incarceration each on the two Sexual Abuse convictions. These first four sentences were to run consecutively to one another and concurrently with the one-year incarceration imposed on the Endangering the Welfare of a Child conviction. R. at pp. 865-66.

Petitioner filed a direct appeal through present counsel James E. Long raising, *inter alia*, the same grounds raised in the instant Petition. Dkt. No. 15, Pet'r Br. The New York State Supreme Court, Appellate Division, Third Department, rejected Petitioner's arguments and affirmed his conviction, but reduced his sentence from a imprisonment term of fifty (50) years to a term of thirty-two (32) years based on Petitioner's previously clean criminal record. *People v. Nickel*, 788 N.Y.S.2d 274, 278-79 (N.Y. App. Div. 3d Dep't 2005). Petitioner's subsequent Application for Leave to Appeal the Appellate Division's decision to the Court of Appeals was denied. *People v. Nickel*, 4 N.Y.3d 834 (2005). Petitioner filed the present *Habeas* Petition on March 31, 2006. Dkt. No. 1, Pet. Respondent concedes that all of Petitioner's claims are timely and have been properly exhausted. Dkt. No. 8, Resp't Mem. of Law at pp. 12-13.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B.  Due Process Claim

Petitioner claims that his due process rights were violated when the trial court denied his motion to suppress without a pre-trial "taint" hearing to determine whether pre-trial statements given by the child victims were the product of suggestive police questioning so as to make the children's

testimony inadmissible at trial.

Prior to trial, Petitioner filed an *omnibus* motion seeking, *inter alia*, suppression of "testimony of any of the complaining witnesses/alleged victims herein, or any other child witnesses intended to be introduced at trial, due to the unduly suggestive nature of the interviews and resultant unreliability of said testimony, or in the alternative the granting of a 'taint' hearing to determine said issue." R. at p. 88. Petitioner argued that "nearly all experts agree that pretrial interviews of alleged child sex abuse victims should be recorded to reduce danger that the children's recollection is tainted by suggestive questioning." *Id.* at p. 103 (internal quotation marks and citation omitted). Further, Petitioner argued that because the police officers' affidavits set forth only the responses of the child interviewees, and not the questions that were asked, "there may have been and in fact must have been suggestive questioning by members of the Albany County Sheriff's Department . . . that render their testimony so unreliable as that it must be suppressed." *Id.* at p. 104 (citation omitted). Thus, Petitioner stated that a hearing was necessary "to determine whether the children's recollections are tainted and their in-court testimony should be barred as unreliable as a result of the taint." *Id.* at p. 105 (citation omitted). The trial court denied Petitioner's motion for a "taint hearing," stating that his "speculative assertions without citing any instances of conduct which might form a basis for arguing that the questioning was suggestive, are insufficient to warrant a pretrial hearing." *Id.* at p. 167 (citation omitted).

Petitioner now claims that his due process rights were violated when the trial court denied his motion for a pre-trial hearing to determine whether the children's pre-trial statements were tainted by suggestive police questioning. The Appellate Division rejected Petitioner's claim, holding that

> [a]lthough there is no express statutory authority for a hearing to determine whether the testimony of child witnesses has been tainted by suggestive interviewing techniques [], such absence is not determinative . . . . Upon a proper showing, a court may direct a pretrial taint hearing . . . . Here, defendant failed to make a nonspeculative showing of any undue suggestion. In any event, any suggestibility, the manner of questioning and its effects on the victims' testimony could be, and was, addressed on cross-examination of the victims and the police investigators . . . . Thus, the court properly denied a pretrial taint hearing.

*People v. Nickel*, 788 N.Y.S. 2d at 277.

As Respondent points out, Petitioner has not identified a federal due process right to a pre-trial taint hearing to determine whether an interviewed child was the subject of suggestive questioning, nor has this Court's research uncovered any. In fact, Petitioner all but concedes the point by "asking this court to apply the fundamental principles of due process to the issue of law enforcement interview techniques of children in the same manner and format as the courts of this nation have done with respect to confessions and eyewitness identification proceedings." Pet'r Mem. of Law at p. 5. None of the cases cited to by Petitioner recognize a *federal* due process right to a pre-trial hearing to determine whether an interview of a child was unduly suggestive, although hearings have been deemed necessary in other contexts. *See, e.g., United States v. Wade*, 388 U.S. 218 (1967) (holding that a hearing was necessary to determine whether witnesses' in-court identifications of the accused should be excluded due to the taint of an unconstitutional pre-trial line-up procedure); *cf. Idaho v. Wright*, 497 U.S. 805 (1990) (holding that a child's pre-trial **hearsay** statements were not properly admitted into evidence under the Confrontation Clause).

Petitioner's reliance on *Washington v. Schriver* is misplaced. 255 F.3d 45 (2d Cir. 2001). That case concerned whether the exclusion of an expert's testimony regarding the suggestibility of child witnesses constituted constitutional error under the Due Process Clause, not whether there is a due process right to a pre-trial taint hearing whenever a child witness has been interviewed prior

to trial. *Id.* (holding that the exclusion of the expert testimony did not constitute constitutional error). Also, in *State v. Michaels*, another case cited by Petitioner, although the New Jersey Supreme Court ordered that a pre-trial taint hearing be held to determine whether interrogations of child-witnesses were improperly suggestive, it did not do so based on a recognition of a federal constitutional due process right. 136 N.J. 299 (1994). In any event, this Court is not bound nor swayed by *Michaels*.

Irrespective of the academic studies to which Petitioner cites that call attention to the danger of distortion of a child's testimony through the use of suggestive questioning, this Court's analysis is limited to the application of clearly established federal law, not Petitioner's argument of what the federal law ought to be.

Because Petitioner has identified no violation of an established federal right, the Court finds that the Appellate Division's decision was not contrary to clearly established federal law, and therefore recommends that the Petition be **denied** on this ground.

### C. Ineffective Assistance of Counsel

Petitioner alleges that his trial counsel, Mr. William Gray, provided constitutionally deficient representation because he failed to (1) call an expert witness on the issue of the suggestibility of the child-witnesses' testimony, and to (2) move for an adjournment to consult a medical expert upon receipt of a newly discovered medical report during trial. Pet.

To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, i.e., there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland*

*v. Washington*, 466 U.S. 668, 688 & 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[4]  In determining the reasonableness of counsel's conduct courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland v. Washington*, 466 U.S. at 689.

### 1. *Failure to Call Expert Witness*

Petitioner claims that trial counsel's failure to call an expert witness to testify on the issue of suggestiveness and improper interview techniques constituted ineffective assistance of counsel. The Appellate Division held that

> [a]lthough counsel did not present an expert witness regarding child victim suggestibility, he cross-examined the children and investigating officers, and provided County Court with information and case law concerning child suggestibility.  Given this information, County Court was clearly in a position to make a reasoned determination concerning the reliability of the child witnesses as well as their credibility.  Despite defendant's hindsight disagreement with counsel's trial strategies, defendant was provided meaningful representation.

*People v. Nickel*, 788 N.Y.S. 2d at 278.[5]

The Appellate Division's conclusion was not an unreasonable application of federal law. It is the law of this Circuit that "[t]he decision to call an expert witness is a strategic decision for the defense counsel, and generally should not be disturbed."  *Mazique v. Ercole*, 2008 WL 2884370, at *9 (E.D.N.Y. July 23, 2008) (*citing United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)).

---

[4] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'" 529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

[5] We note that although the standards for determining ineffective assistance of counsel are different under New York law and federal law, the Second Circuit has held that New York's standard as established in *People v. Baldi*, 54 N.Y. 2d 137 (1981), "is not 'contrary to' the *Strickland* standard for purposes of § 2254(d)(1)," and therefore the deferential AEDPA standard applies to ineffective assistance of counsel claims dismissed on the merits by state courts under the less exacting New York standard.  *Henry v. Poole*, 409 F.3d 48, 69-70 (2d Cir. 2005).

As the Appellate Division noted, trial counsel brought the issue of suggestiveness to the fore through his cross-examinations of the child-witnesses and the investigators who interviewed them. Trial Tr. at pp. 69-78, 90-104, 133-38, 207-12, 233-38, & 316-26; *see, e.g., Jelinek v. Costello*, 247 F. Supp. 2d 212, 284 (E.D.N.Y. 2003) (trial counsel's failure to call an expert witness to testify on the issue of suggestibility did not constitute ineffective assistance of counsel when the introduction of such testimony would have been of nominal value and the attorney raised the issue of suggestiveness through cross-examinations).

In addition, trial counsel identified the issue of suggestiveness and improper interviewing techniques in his opening statement and closing statements.  *Id.* at pp. 23-25 & 448-58. Furthermore, the facts of this case are distinguishable from *Pavel v. Hollins*, 261 F.3d 210 (2d Cir. 2001) and *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001), two cases cited by Petitioner in which the Second Circuit found ineffective assistance of counsel when trial counsel failed to offer expert testimony to rebut the state's evidence of physical abuse against children. The charges brought in this case did not require a demonstration of physical injury to the victims, nor was any physical evidence introduced by the prosecution regarding physical injuries suffered by the boys that might have necessitated the testimony of an expert to rebut such evidence.

Furthermore, this was not a case of a pure "credibility contest" between child-witnesses and a defendant wherein no substantial circumstantial evidence of abuse exists, as was the case in *Pavel* and *Lindstadt*. In this case, Petitioner did not testify, and his confession that he inappropriately touched the children was corroborated by the testimony of the child-witnesses.

Therefore, we find that Mr. Gray's representation did not fall below an objective standard of reasonableness with respect to Petitioner's claim that he should have called an expert witness to

testify on the issue of suggestiveness. We further find that, given the testimony and evidence at trial, there is not a reasonable probability that the outcome of the proceeding would have been different had such an expert been called. Thus, it is recommended that the Petition be **denied** on this claim.

### 2. *Failure to Consult a Medical Expert*

During the testimony of Investigator Bates, who interviewed K.S. during the investigation, it became apparent that a medical exam of K.S. had been conducted at Bates's request. Trial Tr. at pp. 78-80. Prior to Bates's testimony, neither the prosecutor nor the defense attorney were aware that any such exam had occurred. *Id.* During the course of the trial, the prosecutor procured a faxed copy of a three page medical report which was provided to Mr. Gray. *Id.* at p. 106. At that point, the court asked Mr. Gray if he needed time to review the report before resuming his cross-examination of Bates, which Gray declined, preferring to continue with his cross-examination of Investigator Bates. *Id.* at p. 107. After completing his cross-examination, Mr. Gray addressed the court regarding the medical report, asking for "the opportunity to be able to decipher [the report] and know what [] it says." *Id.* at p. 155. On the agreement of both attorneys, the trial court decided that K.S. would testify that day as scheduled, but that Petitioner's attorney would be given the opportunity to review and consult with whomever he deemed necessary about the report, and that K.S. could be asked to return to testify the next day regarding potential medical issues if the need arose. *Id.* at pp. 158-59.

Petitioner claims that Mr. Gray provided constitutionally deficient representation by not consulting with a medical expert regarding the information in K.S.'s medical examination report. However, Petitioner does not allege, and there is no evidence on the record, that the report contained any exculpatory information. While the exact information contained in the medical report is

unknown to this Court, Mr. Gray mentioned that the report listed several drugs. Trial Tr. at pp. 154-55, & 160. Also, on cross-examination of K.S., Mr. Gray questioned K.S. about the medications he was taking on a regular basis, which, according to K.S.'s testimony included Adoral, Clonidine, Ritalin, Zoloft, and Senokot. *Id.* at pp. 194-97.

The Appellate Division denied this claim, stating that "[t]he decision not to request an adjournment for consultation with a medical expert regarding one victim's records was a trial strategy, as counsel was able to effectively cross-examine that victim regarding his extensive medication regimen." *People v. Nickel*, 788 N.Y.S.2d at 278.

Even if we disagreed with the Appellate Division's assessment that the decision not to consult with a medical expert constituted trial strategy, there is nothing on the record to suggest that Petitioner was prejudiced by the decision. Petitioner does not allege that the information in the medical report was exculpatory, and, given the testimony of the child-witnesses, which was corroborated by Petitioner's own statement to the police, we find that there is not a reasonable probability that, but for counsel's decision not to consult with a medical expert regarding K.S.'s medical examination report, the outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

Therefore, it is recommended that this claim be **dismissed**.

### D. Exclusion of Expert Witness

Petitioner claims that the trial court violated his due process and Sixth Amendment rights when it precluded the testimony of his proffered expert witness. At trial, Petitioner called Richard

McAvoy, Jr., as an expert witness in the fields of precision photography and imaging and forensic photography to testify that Petitioner was not the adult male depicted engaging in sexual activity with K.S. in the photograph seized from Petitioner's home. The trial court excluded McAvoy's testimony as an expert, but allowed him to testify as a lay witness. Trial Tr. at pp. 397-414 & 416-18. The court reasoned that while Mr. McAvoy appeared to be qualified in his field, "this particular portion of his field does not seem [] to be such that it requires any expertise" as it does not require any specialized knowledge or training to look at a person face-to-face and see that he is not the same person in a photograph. *Id.* at p. 416. McAvoy testified that the adult male in the photograph with K.S. was not Petitioner. *Id.* at p. 402.

"The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Washington v. Schriver*, 255 F.3d at 56 (citing cases). However, notwithstanding that right, parties "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilty and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1988). With respect to expert witnesses, it has traditionally been within a trial court's decision to admit or exclude expert testimony, and such determination "is to be sustained unless manifestly erroneous." *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985). Furthermore, "[i]ssues regarding the admissibility of evidence in state court concern matters of state law and are not subject to federal review unless the alleged errors are so prejudicial as to constitute fundamental unfairness." *McCray v. Artuz*, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994) (citations omitted).

Petitioner does not assert that the trial court's decision was contrary to state law, but rather,

that it violated his Sixth Amendment and due process rights under the federal constitution. *See* Pet'r Mem. of Law at pp. 40-48. Thus, our review is limited to whether "the omitted evidence creates a reasonable doubt that did not otherwise exist." *Washington v. Schriver*, 255 F.3d at 56 (*quoting Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000)).

In this case, although the trial court did not permit Mr. McAvoy to testify as an expert, it nonetheless permitted his testimony as a lay person. Mr. McAvoy testified that Petitioner was not the person depicted in the photograph presented. The trial court acquitted Petitioner on count # 3 of the Indictment: Use of a Child in a Sexual Performance. Thus, whether or not the inclusion of Mr. McAvoy's expert testimony would have created a reasonable doubt with respect to that claim is a moot question. With regard to the remaining counts of the Indictment for which Petitioner was convicted, those counts were proven by the testimony of the child-witnesses, and by Petitioner's confession. Even if Mr. McAvoy's testimony had been introduced classified as "expert," and even if the trial court had concluded as a matter of fact that Petitioner was not the person in the photograph, that fact would not have created a reasonable doubt with respect to the other crimes for which Petitioner was convicted. Those crimes related to specific acts alleged by the child-witnesses that were corroborated by the Petitioner's own statement.

Therefore, the Court finds that this claim is without merit and should be **dismissed**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial

showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  May 11, 2009
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge